UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| JOHN NEFF, | ) | |
|     Plaintiff, | ) ) | |
| vs. | ) ) | 3:09-cv-00672-RCJ-VPC |
| RONALD BRYANT et al., | ) ) | |
|     Defendants. | ) ) | **ORDER** |

This case arises out of Plaintiff's designation by Defendants as a member of a Security Threat Group ("STG"). Pending before the Court is the Magistrate Judge's ("MJ") Report and Recommendation ("R&R") (ECF No. 17), recommending denial of Defendants' Motion to Dismiss (ECF No. 4). For the reasons given herein, the Court rejects the R&R and grants the Motion to Dismiss.

## I.    FACTS AND PROCEDURAL HISTORY

Plaintiff John Neff, a prisoner appearing pro se, is currently incarcerated at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (Compl. 2, ECF No. 1-2). Plaintiff sued Defendants in state court pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth and Fourteenth Amendment rights. (*See id.* 9). Defendants removed. On March 7, 2009, prison officials found Plaintiff guilty of "assault" and "gang activities" (Mot. Dismiss Ex. A, ECF No.

4-1).[1] Plaintiff appealed the disciplinary findings, but defendant McDaniel affirmed the findings and sanctions of the disciplinary hearing (Mot. Dismiss Ex. B). Plaintiff again appealed and was denied relief (Mot. Dismiss Ex. D).

On June 11, 2009, Plaintiff sent "Inmate Request Form[s]" to both defendants Chambliss and Bryant pertaining to his STG status. (Mot. Dismiss Exs. E–F). An STG is a group of inmates united by a common bond and activity, characterized by criminal or disruptive conduct, which is committed either collectively or individually, and which has the potential to create a threat to security, peace and safety of the prison staff, other inmates, or the general public. *See* NDOC Administrative Regulation 446 ("AR 446"). In his request, Plaintiff wanted to know how and why he acquired STG status. (*See id.*). He inquired, "I'm wondering if I'm supposed to be notified when [STG labeling] happened and if there is a process to deny it?" (Mot. Dismiss Ex. E). Defendant Chambliss responded that if Plaintiff disagreed with his current STG status, he could request an "STG Hearing." *Id.* Defendant Bryant noted that "an interview is conducted . . . STG information gathered is forwarded to the [Inspector General's] Office and entered into the computer system." (Mot. Dismiss Ex. F). Like defendant Chambliss, he indicated that plaintiff could challenge his STG status through a hearing. *See id.*

On June 15, 2009, Plaintiff filed an informal grievance (Mot. Dismiss Ex. G). He stated that AR 446 "mandates officials to provide me Due Process through notification and giving me an opportunity for a hearing to dispute claims." *Id.* Defendant Chambliss replied, "You have been

///

---

[1] According to Defendants' exhibits, "assault" appears to be defined as an "unlawful attempt coupled with present ability to commit a violent injury on the person of another" (Inmate Grievance Report, ECF No. 4-1, at 14). "Gang Activities" is defined as "a validated Security Threat Group member who has engaged or is engaging in criminal activities, threatens the order and security of the institution and/or promotes racism." *Id.*

identified as being affiliated with a STG. If you do not agree, you may request a STG Due Process hearing." *Id.*

On June 25, 2009, Plaintiff filed a first-level grievance. (Mot. Dismiss Ex. H). He quoted from AR 446, alerting Defendants to the regulations requirement that an inmate be notified of suspected STG affiliation. He stated, "This procedure requires a 'suspected' STG to receive Due Process, so Due Process cannot be served after an inmate was validated and it affected him adversely." *Id.* Defendant McDaniel responded, "As you were advised, you have been identified as being with a STG within NDOC. If your STG Due Process was denied, you could have appealed the decision." *Id.* On July 9, 2009, Plaintiff filed a second-level grievance, which the prison also denied. (Mot. Dismiss Ex. I, ECF No. 4-1).

On September 22, 2009, Plaintiff filed the Complaint in state court, alleging that defendants violated his due process rights by classifying him as a STG inmate prior to his receiving notice and an opportunity to be heard.

On December 31, 2009, prison officials conducted an STG Due Process hearing as requested by Plaintiff, and the panel concluded that Plaintiff was a member of an STG. (Reply 4, ECF No. 14).

**II. LEGAL STANDARDS**

The Prison Litigation Reform Act of 1996 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Although once within the discretion of the district court, the exhaustion of administrative remedies is now mandatory. *Booth v. C.O. Churner*, 532 U.S. 731 (2001). Those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (citing *Booth*, 532 U.S. at 739–40 n.5). Even when the prisoner seeks remedies

not available in the administrative proceedings, notably money damages, exhaustion is still required prior to filing suit. *Booth*, 532 U.S. at 741. The Supreme Court has strictly construed section 1997e(a). *Id.* at 741 n.6 ("We will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

Plaintiffs must properly exhaust nonjudicial remedies as a precondition to bringing suit. The PLRA requires "proper exhaustion," meaning that the prisoner must use "all steps the agency holds out, and doing so *properly* (so that the agency addresses the merits)." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006); *see, e.g., Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev. 2006) (Reed, J.) (ruling that "proper exhaustion" consists of fully addressing the grievance on the merits and complying with all critical procedural rules and deadlines). Furthermore, the "language [of section 1997e(a)] clearly contemplates exhaustion prior to the commencement of the action as an indispensable requirement." *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (quoting *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31 (1st Cir. 2002)). Requiring exhaustion prior to filing suit furthers the congressional objectives of the PLRA as set forth in *Porter v. Nussle*, 534 U.S. 516, 524–25. *See id.* at 1200.

The failure to exhaust administrative remedies as required by § 1997e(a) is an affirmative defense, and defendants bear the burden of raising and proving that the plaintiff has not exhausted. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1117 n. 9 (9th Cir. 2003), *cert denied*, 540 U.S. 810 (2003). Failure to exhaust is treated as a matter in abatement, not going to the merits of the claim, and is properly raised in an unenumerated Rule 12(b) motion. *Wyatt*, 3154 F.3d at 1119. The court may look beyond the pleadings and decide disputed issues of fact without converting the motion into one for summary judgment. *Id.* "[I]f the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Id.* at 1119–20.

A prison's own procedures define the contours of proper exhaustion. *See Jones*, 549 U.S. at 218. In Nevada, Administrative Regulation 740 ("AR 740") governs the grievance procedure. *See* Nevada Department of Corrections, Administrative Regulation 740, *available at* http://www.doc.nv.gov/ar/pdf/AR740.pdf. In order to exhaust available remedies, AR 740 requires the following: (1) an informal review process; (2) a first level formal grievance appealing the informal grievance decision to the warden; and (3) a second level grievance, which is decided by the Assistant Director of Operations. *Id.*

### III. ANALYSIS

The MJ notes that Plaintiff does not challenge his continued classification as an STG member, but rather complains of the past harm done by his classification before notice and an opportunity to be heard. The MJ reasons that because Plaintiff has complied with AR 740, he need not also have complied with any exhaustion requirements in AR 446, which governs STG classifications, because AR 740 does not indicate the existence of any exhaustion requirements beyond its own. The MJ therefore recommends denial of the Motion to Dismiss.

The Court respectfully disagrees with this analysis. First, prisons may set their own requirements for administrative exhaustion. *See Jones*, 549 U.S. at 218. Here, NDOC has specifically implemented special procedures for challenging alleged due process violations in STG classification cases (AR 446). The fact that AR 740 (which governs grievances generally) does not indicate additional or different exhaustion requirements applicable in every conceivable context does not mean that such requirements do not exist or that the prison's implementation of them is infirm. Just as a prison may state cumulative or differing contextual exhaustion requirements in separate sections of a single regulation, it may place them in separate regulations altogether. The question would perhaps be more difficult if AR 740 stated on its face that its requirements were exhaustive, but this does not appear to be the case.

Second, contrary to the MJ's agreement with Plaintiff's interpretation of AR 446, that regulation does not clearly state that an inmate may not be designated as an STG member *before* notice and opportunity to be heard. AR 446 is at best ambiguous on this question; it only unambiguously requires notice and opportunity to be heard at some point in time. Section 446.03 governs the designation and appeal process. It indicates that "[t]he inmate will be advised as to the necessary steps to, if desired, *remove* themselves from affiliation . . . ." AR 446 § 446.03(3), *available at* http://www.doc.nv.gov/ar/pdf/AR446.pdf (emphasis added). This language indicates a post-deprivation review, which is constitutionally sufficient in the present context. The Court cannot say as a matter of procedural due process that the designation of an inmate as a security threat requires a pre-deprivation review. The interest of the state in the safety of guards and inmates, as well as the burden of conducting a hearing requiring the presence of several particular staff members within ten days of suspecting an individual of STG membership, are too great, and a prisoner's interest in somewhat less onerous restrictions of his freedom, as well as the minuscule potential increase in accuracy of the STG determination, are too weak, to find that a pre-deprivation review is mandated in this context. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). A post-deprivation hearing as required under AR 446 is sufficient. Even assuming *arguendo* that Plaintiff had exhausted administrative remedies—or that he did not need to exhaust them—his procedural due process claim fails on the merits as a matter of law.

## CONCLUSION

IT IS HEREBY ORDERED that the Report and Recommendation (ECF No. 17) is REJECTED.

IT IS FURTHER ORDERED that the motion to Dismiss (ECF No. 4) is GRANTED.

IT IS SO ORDERED.

DATED: This 24th day of August, 2010.

_____
ROBERT C. JONES
United States District Judge